No. 13,978.

THE UNION OIL MILL CO. VS. JOHN V. KENNEDY.

### SYLLABUS.

The suit was for damages. There was no stipulation in the contract regarding the quality of the article of food for animals. In the previous years, it had given satisfaction. Plaintiff assumed that the quality would be as good as in previous years. It was not. Defendant did not timely complain.

It was manifest that the food was not of a superior quality. One who receives an article of food and takes the chances that it will increase the weight of his cattle and improve them, has no ground of action after having met with disappointment, because he did not succeed in selling them for as much as he expected. After the feed and cattle have been disposed of, it is too late to urge complaint. Besides, defendant made partial payments that conclude him from claiming damages.

APPEAL from the Sixth Judicial District, Parish of Ouachita— Hall, J.

*Stubbs & Russell* for Plaintiff, Appellee.

*John Merritt Munholland* (*E. Tyler Lamkin*, of Counsel,) for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. Plaintiff brought this action to recover judgment against the defendant for the sum of four thousand eight hundred and eighty-eight 35-100 dollars, with interest, claimed by it as due by the defendant for hulls and cotton seed meal bought by the latter from the former to feed his cattle. The price for the hulls and cotton seed meal was agreed upon in October, 1898. Nothing was said at this time regarding the quality of the hulls and meal. In November following, plaintiff commenced to supply defendant with hulls and meal to feed his cattle and it continued thus to supply him until the following April.

The cattle were brought to defendant's pen at Monroe near plaintiff's mill from time to time as he would make purchase of cattle in different places in connection with his business as a dealer in cattle. Defendant would ship a number of cattle from his pens to the market and sell them. Others would be bought and driven to defendant's pen to be fed and fattened for the market. For instance, in December, 1898, he sold

seventy head and continued to sell others at different times and in different lots. In February following, he bought a lot which greatly increased the number he already had on hand. They were cattle sold to him and numbered about one thousand and seven head. He bought others at a later date and, altogether, the number fed with hulls and meal was about two thousand five hundred head.

The amount first above mentioned as due is a balance left after a number of partial payments made by defendant. The first payment was made in January, and the last on the 21st of April, 1898.

Defendant admits that he entered into a contract with the plaintiff, as plaintiff claims, and further admits that the number of tons of hulls and meal bought was the number claimed. But he seeks to offset the amount and to recover a large sum by setting up that plaintiff had failed to deliver to him prime cotton seed meal and hulls for fattening his cattle; that, on the contrary, they were not fit for the purpose for which he, to the knowledge of the plaintiff, had bought them. He charges that owing to the unsanitary condition of the food, he was subjected to great loss, as some of the cattle died, and those remaining, after they had been fed the required time, were not in first-class market condition; that he was compelled to accept a lower price for them than he could have otherwise gotten; and that the article sold was not animal food as it was only fit for fuel and fertilizing purposes.

Defendant, in the first place, interposed the plea of *lis pendens.* While he was in the Indian Territory attending to business as a dealer in cattle, plaintiff brought suit against him in one of the United States Courts in that Territory for the amount it now claims in this suit. Defendant joined issue with the plaintiff before that court. The suit was never brought to trial. Although that court had the first jurisdiction over the case, it does not have the effect of staying proceedings before a State court of concurrent jurisdiction. A suit in another State does not support the exception. The comity between the States will afford protection enough to the judgment debtor to enable him to escape from paying two judgments for the same claim. But it does not have the effect of a bar to proceedings before judgment.

We take up the points for decision on the merits. They grow out of the reconventional demand based upon the asserted bad food supplied by plaintiff. While it is unquestionably true that for a number of years previous to 1898, the food supplied by plaintiff to feed defendant's cattle was nutritious enough, it does not necessarily follow that plaintiff

is liable because the meal and hulls in 1898 were not equal in grade to that of previous years. Defendant, doubtless, expected a quality equally as good, but none the less it remains that no stipulation at all was made regarding the quality of the article to be delivered.

The testimony discloses that the season in 1898 was not favorable to cotton. The seed was not as sound as it usually is. The rains were unusually frequent. The ground was damp and the winter was cold and damaging to cotton seed. We infer that plaintiff's pulverized seed and hulls were about the same in quality as that sold at other mills. Plaintiff left it to the defendant to pick out the best grades and sought to lay aside the best meal and hulls to be delivered to him. The effect that this difference in quality would have on the cattle does not seem to have been known to any one at the time. The defendant knew that it was not a prime article, and yet he continued to receive it and have it fed to his cattle. Several times he complained to plaintiff's agent, but he continued to receive the food. He never made the least attempt to put plaintiff in default by demanding a better article. On the contrary, he made partial payments on his account to a date near the end of his contract. He sold a number of his cattle and in the end drove away those remaining in his pens without notifying plaintiff that the quality of the food furnished had been unsatisfactory to such an extent that he would not pay it the balance of his account. It was only when plaintiff called for payment of this balance that defendant informed him of his unwillingness to pay. In view of the facts and circumstances, it was then too late to raise the objections that are now pleaded.

The burden of proof was with the defendant. It was for him to sustain his demand with testimony showing, with reasonable certainty, that the food sold by plaintiff was the cause of defendant not realizing as much profit on his cattle as he had cause to anticipate at the time he placed them in his pens to be fattened.

There are many causes to be considered in matter of fattening cattle. The variation of temperature in the locality; the change from one locality to another; the difference in climates; the sudden change from one food to another; the dampness and the wind and rain—are all causes which would tend to retard cattle in fattening. If food alone be the cause, we imagine that in order to recover damages the owner of the cattle must, with some energy, begin early, while the contract is being executed, to lay the foundation for his claim. This, in our view, defendant failed to do.

The causes which influence animal life must frequently be followed closely and studied in order to detect them with any degree of certainty. Under certain conditions, food will be ample that will not give any satisfaction under another condition. For that reason, we imagine that the average stable man, entrusted with the keeping of a horse, would be greatly surprised at the end of a certain number of days, the animal not having increased in weight and appearance while in his charge and having been sold for a limited price, if called upon for indemnity, because the food, to which no special objection had been made to him previously, was not of first quality, although it was the best he could find. The same, to some extent, is true of a drove of cattle. Unless it is shown with some degree of certainty that food is the immediate and direct cause of their failure to fatten, it can not well be concluded that the vendor of the food is the responsible party to be held in damages.

From the testimony of the witnesses, it is made quite evident that it is not difficult to find out the difference between an inferior and a superior quality of cotton seed meal. If the food sold was of too inferior grade for use, it should not knowingly have been used by the vendee. Proper complaint by the vendee is an important factor in business. The questions decided in the case of Commission Company vs. Oil Mill Company, 104 La. 664, were very similar to those in this case.

For the reasons assigned, the judgment appealed from is affirmed.

